# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Coos Superior Court
55 School St., Suite 301
Lancaster NH 03584

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:     **David Widi, JR v U.S. Probation Department, et al**
Case Number:   **214-2014-CV-00024**

Date Complaint Filed: February 06, 2014

A Complaint has been filed against FNU Gaunyea; FNU Gluc; Scott Hastings; L. Hogan; D Hudon; Langley; Y Matteau; Wanda Mullens; David Salamy; Dan Sullivan; E.L. Tatum; The Federal Bureau of Prisons; U.S. Probation Department in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| May 12, 2014 | David Widi Jr shall have this Summons and the attached Complaint served upon FNU Gaunyea; FNU Gluc; Scott Hastings; L. Hogan; D Hudon; Langley; Y Matteau; Wanda Mullens; David Salamy; Dan Sullivan; E.L. Tatum; The Federal Bureau of Prisons; U.S. Probation Department by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| June 02, 2014 | David Widi Jr shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | FNU Gaunyea; FNU Gluc; Scott Hastings; L. Hogan; D Hudon; Langley; Y Matteau; Wanda Mullens; David Salamy; Dan Sullivan; E.L. Tatum; The Federal Bureau of Prisons; U.S. Probation Department must file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to FNU Gaunyea; FNU Gluc; Scott Hastings; L. Hogan; D Hudon; Langley; Y Matteau; Wanda Mullens; David Salamy; Dan Sullivan; E.L. Tatum; The Federal Bureau of Prisons; U.S. Probation Department:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
David Widi, JR

#05168-036
FCI Berlin
PO Box 9000
Berlin NH 03570

BY ORDER OF THE COURT

March 28, 2014

David P. Carlson
Clerk of Court

NHJB-2678-S (10/23/2013)

EXHIBIT A

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: _Coos County Superior Court_

Case Name: _David J. Widi Jr. v. Federal Bureau of Prisons_

Case Number: _____
(if known)

## MOTION FOR: _In Forma Pauperis Status_

The _Plaintiff, David J. Widi, Jr. ("Mr. Widi"), hereby_
states the following facts and requests the following relief:

1.) Mr. Widi is currently incarcerated in a federal prison.

2.) Mr. Widi lacks the funds to pay the filing fees associated with the accompanying civil rights complaint. See attached affidavit.

3.) Mr. Widi requests that the Court waive the associated filing fee and allows Mr. Widi to proceed in forma pauperis in the interests of justice.

_November 18, 2013_     Signature: _/Widi/_    #05168-036
Date

Telephone: _N/A_     Address: _FCI Berlin, P.O. Box 900, Berlin, NH 03570_

I certify that on this date I mailed/delivered a copy of this document to:

_ex parte_     or     _____
(other party)     (other party's attorney)

_February 9, 2014_     Signature: _/Widi/_
Date

_2014 FEB 13 A 10 COOS SUPERIOR COURT_

---

## ORDER

☑ Motion granted / ☐ Motion denied. _in part, the plaintiff shall pay $____ toward the filing fee._

**Recommended:**

Date _____

Printed Name of Marital Master _____

Signature of Marital Master _____

**So Ordered:** _3/3/__

Date _____

Printed Name of Judge _____

Signature of Judge _____

NHJB-2201-DFS (12/06/2008)
(formerly AOC 807-008)

Page 1 of 1

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: Coos County Superior Court

Case Name: David J. Widi Jr. v. Federal Bureau of Prisons

Case Number:
(If known)

## AFFIDAVIT OF ASSETS AND LIABILITIES

1. Name: David J. Widi Jr. #05168-036  DOB: 03/06/1983

2. Where do you live? FCI Berlin, P.O. Box 9000, Berlin NH 03570

3. Marital Status:  ☒ Single   ☐ Married   ☐ Separated   ☐ Widowed

4. List the names, ages, relationships of dependents you support:
   N/A

5. If you are presently employed, state where and for how long:
   N/A
   ☐ Full-Time   ☐ Part-Time

6. If unemployed, state last date of employment: November 28, 2008

7. When do you anticipate new employment? October of 2016

8. If your spouse is presently employed, state where and for how long?
   N/A   ☐ Full-Time   ☐ Part-Time

9. If spouse unemployed, state last date of employment: N/A

10. List other employed household members and their weekly income: N/A

11. Please state **weekly take-home amount**

| | Yours | Spouse's |
|---|---|---|
| Salary/Wages | $ _____ | $ _____ |
| Pension/Trust Benefits | $ _____ | $ _____ |
| Unemployment Compensation | $ _____ | $ _____ |
| Social Security | $ _____ | $ _____ |
| Investment income | $ _____ | $ _____ |
| Alimony | $ _____ | $ _____ |
| Child Support | $ _____ | $ _____ |
| Welfare Payments | $ _____ | $ _____ |
| Other | $ 20~ | $ _____ |
| Total | $ _____ | $ _____ |

12. What money is presently available to you?

| | |
|---|---|
| Cash on hand  Prison Inmate Trust Account | $ 10.07 |
| Checking account _____ | $ _____ |
| Savings account _____ | $ _____ |
| Stocks/Bonds/IRA/Pension _____ | $ _____ |
| Total | $ _____ |

COOS SUPERIOR COURT  2014 FEB 13  A 9:17

Case Name: David J. Lun, Jr. v. Federal Bureau of Prisons
Case Number:
AFFIDAVIT OF ASSETS & LIABILITIES

13.  Please state your monthly household expenses:

| | | | |
|---|---|---|---|
| Rent/Mortgage | $ _____ | Clothing | $ _____ |
| Property Taxes | $ _____ | Transportation | $ _____ |
| Heat | $ _____ | (including gas, maintenance, insurance repairs) | |
| Food | $ _____ | Other (specify) | |
| Utilities | $ _____ | | |
| Medical/Dental | $ _____ | _____ | |
| Insurance | $ _____ | _____ | |
| Total | $ _____ | | |

14.  List any real estate you own, its market value and the amount you owe:

N/A

15.  List any vehicles you own (car, truck, boat, motorcycle, snowmobile, RV), their market value and the amount you owe:

N/A

16.  List income tax paid last year:  N/A

17.  List income tax refund received last year:  N/A

18.  Other than monthly household expenses, list any bills you owe, amount owed, to whom, and monthly payment:

N/A

19.  List which of your bills are court-ordered payments (i.e. alimony, judgment in a law suit, etc.):

20% of monthly deposits to my inmate account goes to U.S. District Court.

20.  Other than those previously mentioned, list anyone to whom you owe money, amount and when it is due:

N/A

21.  If anyone owes you money, state name, address, amount due, and when due:

N/A

22.  List any property you have transferred within the last three years, to whom and for what price:

N/A

23.  List any other assets or expenses not previously mentioned:

N/A

I swear the foregoing information is true and correct to the best of my knowledge under penalties of law.

February 9, 2014
Date                                                                      Signature

# THE STATE OF NEW HAMPSHIRE

Coos County, SS.                                    Superior Court

David J. Widi, Jr.,
    Plaintiff,

v.                                          No.

                                    ✻ Jury Demand ✻

Federal Bureau of Prisons, et al.,
    Defendants.

COOS SUPERIOR COURT
2014 FEB 13 A 10:17

## Civil Rights Complaint

Plaintiff David J. Widi, Jr. ("Mr. Widi"), pro se, hereby submits this civil rights complaint under 42 U.S.C. § 1983 et seq. and 5 U.S.C. § 552a et seq. in which he seeks monetary damages and injunctive relief for the following reasons:

Pg 1

# – Parties –

1.) Mr. Widi was convicted in federal court and sentenced to 108 months imprisonment. See United States v. Widi, 2:09-cr-00009-GZS (D.Me). Mr. Widi was committed to the custody of the Federal Bureau of Prisons ("BOP"). Id. The BOP has housed Mr. Widi in FCI Otisville, FCI Ray Brook, and he is presently confined at FCI Berlin.

2) The U.S. Probation Department, at all times relevant to this complaint, is responsible for the supervision of persons convicted of a federal crime. One of the duties of the U.S. Probation Department is to generate a Pre-Sentence Report ("PSR") to assist the sentencing judge in determining an appropriate sentence. The PSR is also forwarded to the BOP to be utilized in determining the appropriate security or custody level for the federal prisoner.

3) Scott Hastings ("Hastings"), at all times relevant to this complaint, is employed by the U.S. Probation Department as a U.S. Probation Officer ("USPO"). Hastings is responsible for the supervision of Mr. Widi and was the individual whom generated the PSR.

Pg. 2

4.) The Federal Bureau of Prisons ("BOP"), at all times relevant to this complaint, is a component of the U.S. Department of Justice that is responsible for the custody of Federal prisoners. The BOP's Designation and Sentencing Computation Center is responsible for calculating a prisoner's custody score, which will determine that prisoner's security level, by using the information contained in the PSR, Judgement and Commitment ("J&C"), and Statement of Reasons ("SOR") along with other verifiable sources of information. The information related to custody scoring is compiled and assigned points in a Custody Classification Form, that is maintained in the BOP's SENTRY computer system.

5.) D. Hudson, at all times relevant to this complaint, is employed by the BOP as Warden of FCI Ray Brook. Hudson's duties included the oversight of staff, inmate case management, and the approval of transfers.

6.) FNU Gaunyea, at all times relevant to this complaint, is employed by the BOP as Case Management Coordinator ("CMC") at FCI Ray Brook. As CMC, Gaunyea is responsible for providing technical assistance to the Unit Manager and Case manager, along with oversight of these subordinates actions regarding custody classification and transfers.

Pg 3

7.) David Salamy, at all times relevant to this complaint, is employed by the BOP as a Unit Manager. As Unit Manager, Salamy was responsible for oversight of custody classification and inmate transfers.

8.) FNU Glue, at all times relevant to this complaint, is employed by the BOP as a Case manager at FCI Ray Brook. As case manager, Glue is responsible for all case work service and preparation of classification material relating to an inmate's commitment, including custody classification and transfers. Glue is responsible to Unit Manager Salamy and CMC Gounyea on a daily basis.

9.) Y. Matteau, at all times relevant to this complaint, is employed by the BOP as a case manager at FCI Ray Brook. As case manager, Matteau is responsible for all casework service and preparation of classification material relating to an inmate's commitment, including custody classification and transfers. Matteau is responsible to Unit Manager Salamy and CMC Gounyea on a daily basis.

Pg 4

10.) E. L. Tatum, at all times relevant to this complaint, is employed by the BOP as Warden at FCI Berlin. As Warden, Tatum is responsible for the oversight of all subordinate staff and inmate case management.

11.) Dan Sullivan, at all times relevant to this complaint, is employed by the BOP as CMC at FCI Berlin. As CMC, Sullivan is responsible for providing technical assistance to the Unit Manager and Case manager along with the supervision of these subordinates actions regarding matters of custody classification and transfer.

12.) Wanda Mullens, at all times relevant to this complaint, is employed by the BOP as Unit Manager at FCI Berlin. As Unit Manager, Mullens oversees inmate case management and the case manager, who is responsible for all casework and classification material.

13.) L. Hogan, at all times relevant to this complaint, is employed by the BOP as a Correctional Counselor at FCI Berlin. As a Correctional Counselor, Hogan is responsible for facilitating the administrative remedy process by acting as a liaison between inmates and staff as well as providing the forms necessary to utilize the administrative remedy process.

Pg. 5

14) Langley, at all times relevant to this complaint, is employed by the BoP as a Correctional Counselor at FCI Berlin. As a Correctional Counselor, Langley is responsible for facilitating the administrative remedy process by acting as a liaison between inmates and staff as well as providing the forms necessary to utilize the administrative remedy process.

Pg. 6

## – Background –

15.) In anticipation of Mr. Widi's sentencing, Hastings calculated Mr. Widi's Criminal History Score to be a level II. Mr. Widi's convictions for Driving to Endanger and Disorderly Conduct (PSR, ¶ 28-29) were excluded from calculation of the Criminal History Score under U.S.S.G. §§ 4A1.2 (c)(i).

16.) At the conclusion of Mr. Widi's sentencing proceedings, Judge Singal adopted the PSR generated by Hastings and sentenced Mr. Widi in accordance with a Criminal History Score of II as reflected by the SOR.

17.) When Mr. Widi's Criminal History Score was calculated by the BOP's Designation and Sentencing Computation Center ("DSCC") he was calculated as having a Criminal History Score of IV. The DSCC based his calculation on the belief that the Court and Hastings, as the USPO, had erroneously calculated Mr. Widi's Criminal History Score by not assessing points for the convictions for Driving to Endanger and Disorderly Conduct (PSR, ¶ 28-29).

Pg 7

18.) Under BOP Policy - P5100.08, Chap. 4, Pg. 8, ¶8 - it is provided that: "The CHS is derived from the US Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the SOR. If not found in either the Judgment or SOR, use the points assessed by the USPO in the PSR."

19.) As the increase of Mr. Widi's Criminal History Score added points to his custody scoring that would allow for him to be held at a higher security level, he challenged the DSCC's reassessment through the informal resolution process at FCI Otisville. Mr. Widi argued that under P5100.08 the BoP was bound by both the Court's assessment in the J&C / SOR and the USPO's assessment in the PSR. Mr. Widi further argued that his convictions for Driving to Endanger and Disorderly Conduct were to be excluded from calculation in his Criminal History Score under U.S.S.G. §§ 4A1.2(c)(1).

20.) Mr. Widi's case manager at the time - Frank Abbamonte- agreed with Mr. Widi and changed his Criminal History Score back to a II.

Pg 8

- Factual Allegations -

21.) As of January 7th, 2014, Mr. Widi's Custody Score had dropped to a level 15, which meant that he was to be transferred to a low security facility.

22.) At the time, Mr. Widi had been experiencing problems with Staff at FCI Ray Brook taking actions to obstruct his access to the Courts. Mr. Widi had filed administrative remedy requests on the issue.

23.) Salamy, Gluci, and Matteau met on January 8th, 2014, and returned Mr. Widi's Criminal History Score to a III. Mr. Widi was also given one point to his custody scoring for drug/alcohol abuse in the past five years, even though he had been incarcerated for over five years without a drug or alcohol sanction. The addition of these points returned Mr. Widi's Custody Score to a medium security and he was put in for a transfer to FCI Berlin. The increase of Mr. Widi's Custody Score was a retaliatory measure meant to force him to endure the more harsh conditions of a higher security level and the transfer to FCI Berlin was also a retaliatory measure as the conditions at FCI Berlin are known to be deplorable.

Pg 9

24) The deliberate miscalculation of Mr. Widi's points and his transfer to FCI Berlin were approved by Hudson and Gaumya whom both approved of and agreed with the retaliatory nature of the actions.

25). At 11:00 am on January 9th, 2014, Mr. Widi was told to pack-up his belongings because he was being transferred to FCI Berlin. Mr. Widi asked Glue and Matteau how he was being transferred to a medium security when he had low points. Glue and Matteau told Mr. Widi that they had recalculated his points to make them appropriate for medium security by adding two points to his Criminal History Score and by giving him one point for drug/alcohol abuse in the past five years. When Mr. Widi complained that these points were wrongfully added to his custody score, Glue and Matteau told Mr. Widi that he should have thought of that before filing administrative remedy requests.

26.) That same day, Mr. Widi spoke to Hudson, Gaumya and Solomy about the issue whom all told him that he wouldn't be going to a medium if he didn't write up staff through the administrative remedy process.

Pg 10

27.) At 4:00 am on January 10th, 2014, Mr. Widi was transferred from FCI Ray Brook to USP Canaan. On January 16th, 2014, Mr. Widi was transferred from USP-Canaan to MDC-Brooklyn. On January 17th, 2014, Mr. Widi was transferred from MDC-Brooklyn to FCI Berlin.

28.) On January 21st, 2014, Mr. Widi requested to be provided with a BP-8 and BP-9 to address the issues with his transfer. Langley, who shared responsibilities with Hogan as Counselor for Mr. Widi's unit, informed Mr. Widi that she had been directed to not provide the BP-9 until the BP-8 had been answered. Mr. Widi complained that BOP policy required the BP-8 and BP-9 to both be filed within 20 days of the date of incident. See P1330.17, Para. 8; 28 CFR 542.14(a). And Mr. provided these citations to Langley, yet she still refused to provide the BP-9, so Mr. Widi requested a second BP-8 that he filed about this issue.

29.) The same day, Mr. Widi sent an electronic request to Warden Tatum in which he explained the issues with his transfer and Langley's refusal to provide the BP-9.

30.) On January 24, 2014, Warden Tatum assured Mr. Widi that the "matter has been referred to the appropriate departments for review."
Pg 11

31.) On the same day, Case Manager Bradley called Mr. Widi into his office to review Mr. Widi's custody points. After reviewing Mr. Widi's file, Bradley agreed that the scoring for Mr. Widi's Criminal History and Drug Abuse within past five years was wrong. Bradley corrected the Drug/Alcohol Abuse, but said he had to speak with Mullens about correcting the Criminal History.

32.) Immediately after the meeting with Bradley, Langley returned Mr. Widi's BP-8 regarding the denial of the BP-9. Mr. Widi expressed dissatisfaction with the response and asked for a BP-9. Langley went into Bradley's office and met with him in private. Thereafter, Langley provided Mr. Widi with a BP-9.

33.) To preserve his issue regarding the transfer, Mr. Widi used the BP-9 to address that issue as it was his objective to obtain a BP-9 so that he could properly file within 20 days as required by both P1330.17, para. 8, and 28 CFR 542.14(a). Mr. Widi submitted the BP-9 the same day.

34.) On January 28, 2014, Mr. Widi's BP-9 was received by Warden Tatum and returned to Mr. Widi for not having resolved the issue in the BP-8.

Pg 12

35.) That same day, Mr. Widi was called into a conference room to speak to Mullens. Mullens said that she believed that Mr. Widi's Criminal History Score had been miscalculated because he did not receive points for his convictions for Driving to Endanger and Disorderly Conduct. Mr. Widi explained to Mullens that Under U.S.S.G. 4A1.2(c)(1) these convictions are excluded from calculation of the Criminal History Score, which is why both the SOR and PSR report reflect a Criminal History Score of II. Mr. Widi also told Mullens that he had previously addressed this issue through the administrative remedy process and prevailed. Mullens responded that BOP policy allowed her to use her own point system to calculate Mr. Widi's Criminal History Score and, when Mr. Widi argued that this was not true, Mullens became belligerant. Thereafter, Mullens ordered Mr. Widi out of the room.

36.) Mr. Widi proceeded to send Mullens an electronic request memorializing the conversation in which he pointed out that under P5100.08, chap. 4, para. 8, the Criminal History Score is derived from the US Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the SOR. If not found in either the Judgment or SOR, use the points assessed

Pg 13

by the USPO in the PSR." Again, Mr. Widi explained that his SOR and PSR reflected a Criminal History Score of II, and that under U.S.S.G. §§ 4A1.2(c)(i) his convictions for Driving to Endanger and Disorderly Conduct are excluded from calculation of his Criminal History Score. Mr. Widi also promised to provide a hand copy of the request to Mullens.

37.) The next day, Mr. Widi received a response that: "Requests for the A Unit Team should be directed to the Inmate To UnitA mailbox." Mr. Widi replied that there was no such option in the electronic request drop down menu.

38.) That same day, Mr. Widi spoke to CMC Sullivan about the issue. Sullivan said he had received the electronic request and would forward it to Mullens. Mr. Widi further explained the issue to Sullivan and he told Mr. Widi that Hastings was being contacted about the issue, but that the issue probably wouldn't be corrected because Mr. Widi had filed administrative remedy requests against staff. Sullivan acknowledged that staff are taking retalitory measures against Mr. Widi.

39.) Immediately after this conversation, Mr. Widi went to Mullens office or a provide a hand copy of

Pg 14

the request with attachments of P5100.08, Chap 4, Pg B, and O.S.n.G. §§ 4R1.2. Mullers said she would review the materials.

40) That day, Mr. Widi also sent a letter to Hastings explaining the situation and asked that I a contact Sullivan or Hastings about the issue.

41) Mr. Widi spoke with Warden Tatum about the issue and he told Mr. Widi that he would have been at a loss if he hadn't filed administrative remedies against staff at Ray Brook and Berlin. Tatum told Mr. Widi he was going to go with staff on the issue.

42) On January 29th, 2014, Mr. Widi again asked for a BP-9 from Hogan because it was the 20th day from the date that Mr. Widi discovered the deliberate miscalculation of his custody points and the BP-9 needed to be filed by that date under P1330.17 and 28 CFR § 542.14(a). Hogan refused to provide the BP-9 to Mr. Widi, so Mr. Widi asked for a BP-8 that he filed about being denied the BP-9.

43) On February 6th, 2014, Mr. Widi was placed on the Callout Sheet to meet with Mullers at 1:00pm and Hogan at 2:30pm.

Pg 15

44.) At the meeting with Mullens, Mr. Widi again requested that his custody score be corrected and again explained that BOP policy stated the Criminal History Score was to be derived from the SOR or PSR, which both indicated that his Score was II. Mr. Widi also articulated that his convictions for Driving to Endanger and Disorderly Conduct were excluded from the calculation under U.S.S.G. 4A1.2(c)(1). Mullens told Mr. Widi that he would have been at a low security facility if he hadn't written up staff through the administrative remedy process at Ray Brook and Berlin. Mullens told Mr. Widi to sign his progress report and he refused on the grounds his custody scoring was wrong. Mullens ordered Mr. Widi to leave the conference room.

45.) When Mr. Widi met with Hogan, she returned the BP-8 regarding transfer and the second BP-8 regarding the denial of the BP-9 to Mr. Widi. Mr. Widi requested BP-9's to address the situations further as he was dissatisfied with the responses. Hogan told Mr. Widi that he had to have Mullens sign off on the BP-8's.

Pg 16

46) Mr. Widi went back to Mullens and asked her to sign off on the BP-8's. Mr. Widi also complained that the BP-8 regarding the transfer hadn't been returned to him until over 20 days after the date of the incident and that he was concerned the failure of staff to provide the BP-9 would be viewed as a procedural default. Mullens then proceeded to sign the BP-8 regarding the transfer with a date of January 28, 2014, and then said that they had responded within the 20 days while laughing. Mr. Widi told Mullens that it was a federal crime to forge federal documents and she shrugged. Mullens threatened to have Mr. Widi locked up, so he left.

47) Later that night, Mr. Widi spoke to Hogan about the issue as Hogan had provided both the BP-8's earlier that day, thus one could not have been dated as January 28th, 2014. Mr. Widi also pointed out that Hogan had written on the second BP-8 concerning the denial of the BP-9 that she had provided a BP-9 two days prior to Mullens signing off on the BP-8. Mr. Widi complained of staff creating fraudulent documentation and pointed out to Hogan that on a prior occasion she had Mr. Widi sign documentation that she prevented him from dating so that she could back date it. Hogan got mad and refused Mr. Widi the BP-8's.

Pg 17

She also said that if Mr. Widi wanted policy to be
followed then he couldn't raise his claim about the
transfer because he didn't file a BP-9 within 20 days
of the incident.

48.) Mr. Widi immediately filed an electronic request
to Warden Tatum about the incident and that request
was not responded to.

49.) Mullens, Langley, and Hogan deliberately took
steps to obstruct Mr. Widi's access to the administrative
remedy process. Tatum has implemented an institutional
policy making the exhaustion of the BP-8 a prerequisite
to issuance of the BP-9 that violates PI330.17 and
28 CFR 542.14. As a result of the impediments to
the administrative remedy process, Mr. Widi has
constructively exhausted his administrative remedies.

50.) Sometime prior to February 6th, 2014, Hastings
spoke to Mullens and agreed with Mullens that Mr.
Widi's criminal history score was miscalculated and
should be a IV and not a II. This action was taken
by Hastings to assist Raif staff in taking retaliatory
measures against Mr. Widi partly due to the fact that
Mr. Widi refused to cooperate in the drafting of the
PSR.

Pg 18

51.) On February 6th, 2014, Mr. Widi sent a letter to Hastings asking him to explain why he agreed that Mr. Widi's Criminal History Score was a IV instead of a II. and asking him to contact Sullivan to correct the matter. To date Hastings has not taken any steps to address the issue.

52.) Inmates in low security institutions are not locked into their cells, their custody may is not sent, they are allowed to receive publications from any source, they are not subjected to controlled moves, they may experience visits outside the security perimeter, and generally experience greater freedom and privileges than higher security inmates. The deliberate miscalculation of Mr. Widi's custody score to keep him at a higher security level has deprived him of those rights, opportunities, benefits, freedoms, and privileges associated with lower security level.

Pg 19